[Civ. No. 23453.   First Dist., Div. Two.   Dec. 21, 1966.]

Estate of DAVID SUPPLE, Deceased. TERENCE HALLI-NAN, Plaintiff in Intervention and Appellant, v. THE ROMAN CATHOLIC ARCHBISHOP OF SAN FRAN-CISCO et al., Defendants and Respondents.

Vincent Hallinan for Plaintiff in Intervention and Appellant.

Barrett, Lucey & Harkleroad, Emmett Lucey, John F. Duff, Pillsbury, Madison & Sutro, Noel J. Dyer, Charles P. Knights, Wilkie C. Courter, Pasquinelli, Panelli, Nino & Filice, Edward A. Panelli, Broad, Busterud & Khourie, John W. Broad, Clark, Heafey & Martin, Gerald P. Martin, Frank J. Perry, Tobin & Tobin, Brobeck, Phleger & Harrison and William P. Callahan for Defendants and Respondents.

SHOEMAKER, P. J.—This is an appeal by Terence Hallinan, the intervener in a will contest, from a judgment on the pleadings.

John Smith, a grandnephew of the testator, filed a contest of the will of David Supple,[1] which theretofore had been admitted to probate. The will left a substantial portion of Supple's estate to various charities affiliated with the Roman Catholic Church. Smith attacked the will upon the grounds that it was improperly executed, that the testator was not of sound and disposing mind or memory at the time of its making, and that his signature thereto was obtained by fraud and undue influence.

Thereafter Terence Hallinan, an assignee of one-quarter of Smith's interest in the Supple estate, filed a "contest in intervention" which attacked the will on the grounds of fraud and undue influence only. The Hallinan pleading, which was identical with the fraud and undue influence counts of the Smith pleading, enumerated the various charities (including schools, missions and religious orders and societies) which were named in the will, and alleged that all of them were agents, agencies and divisions of the Roman Catholic Church. It was further alleged that the testator had been a devout Roman Catholic from his earliest childhood until the time of his death and that the charitable beneficiaries named in the will had educated and instructed him continuously throughout his life, and in so doing had acted as agents for the Church and for each other.

---

[1] The term "will" as used in this opinion refers to the will executed in 1958 and the two codicils executed in 1959 and 1960.

Allegedly the testator was taught that every human being has an immortal soul which can experience both pleasure and pain and which, upon the death of the body, is consigned either to Heaven, Hell or Purgatory; that Heaven is a place of complete and eternal bliss, Hell is a place of complete and eternal torment, and Purgatory is a place of temporary torment; that the consignment of a person's soul to one of these three regions is dependent upon the degree to which the person complied during his lifetime, with certain rules and commands which were prescribed by God but as to which the Roman Catholic Church, God's Vicar and representative on earth, has been appointed the depositary, interpreter and promulgator; that the soul of a person who dies while wilfully guilty of violating any important rule will be consigned to Hell and the soul of a person guilty of lesser derelictions will be consigned to Purgatory until his offenses shall have been expiated; that in order for a person's soul to enter Heaven, he must have faith and must also have performed certain good works, which may include the bestowal of gifts, legacies and devises upon the Church and its divisions or agents; that as a reward for such good works, the priests and agents of the Church will recite prayers and perform ceremonials which will have the effect of facilitating the consignment of his soul to Heaven or shortening the period within which his soul, or that of another person whom he may designate, shall be required to spend in Purgatory. It was further alleged that the testator firmly believed all of the above representations and executed his will in reliance upon them and in the belief that the salvation of his soul and the souls of his predeceased relatives might be procured if he left the bulk of his estate to the Church and its agents, agencies and divisions. It was also alleged that all of the above representations were in fact false and untrue, constituting childish superstitions incompatible with man's advanced position in science and technology, and that the charitable beneficiaries who made these representations were guilty of unduly influencing the testator and were also guilty of fraud because they had made positive assertions which, although they believed them to be true, were not warranted by the information which they had (Civ. Code, § 1572, subd. 2) and because they had breached a duty which, without an actually fraudulent intent, gained them an advantage by misleading the testator to his prejudice and the prejudice of his heirs at law (Civ. Code, § 1573, subd. 1).

Certain of the charitable beneficiaries named in the will filed

answers to the Smith pleading[2] and, in response to the fraud and undue influence allegations thereof, denied that they were agents, agencies or divisions of the Roman Catholic Church but admitted that they operated under the general auspices of said Church and that their members belonged to said Church. They also admitted, on information and belief, that the testator had been taught and educated in the doctrines and tenets of the Roman Catholic Church and that such doctrines included a belief in the immortality of the soul and in the existence of Heaven, Hell and Purgatory, although not as places existing in the visible universe. They further admitted that the Roman Catholic Church taught that Heaven is reserved for the souls of persons free from mortal sin and Hell for the souls of persons guilty of such sin, and that a soul may attain salvation only through faith supplemented by good works, which may include the bestowal of gifts upon the Church or its divisions or agents. However, they denied that the Church taught that it could in any way help a soul consigned to Hell or that as a reward for the bestowal of gifts, legacies and devises, the Church would recite prayers and perform ceremonials which would facilitate the consignment of the soul to Heaven or shorten the period which the soul might be required to spend in Purgatory.

In this state of the case, the beneficiaries under the will moved for judgment on the pleadings against Smith as to the fraud and undue influence counts of his pleading, and against Hallinan as to his entire pleading. On the same day, the beneficiaries also moved to strike the Hallinan pleading and the fraud and undue influence counts of the Smith pleading.

In due time the matter was heard and in ruling upon the matter, the court filed a memorandum opinion in which it stated that the gist of the fraud and undue influence counts of the two pleadings was that the charitable beneficiaries named in the will had influenced the making of the will by teaching the testator certain religious beliefs which were in fact untrue and which they had no reason to believe were true. The court concluded that the pleadings in question were fatally defective in that they contained no allegations to the effect that those responsible for such teachings did not, in good faith, believe them to be true, that there was any special or concerted effort

[2]Since the Hallinan pleading, as above noted, was identical with the fraud and undue influence counts of the Smith pleading, an answer to the Smith pleading is in practical effect an answer to the Hallinan pleading as well.

designed to influence the testamentary act, or that the testator was taught anything other than the usual teachings of the Roman Catholic Church. The court further noted that counsel for Hallinan had indicated that he had no desire to make any substantial change in the allegations of his contest in intervention.

The court granted the motion to strike the fraud and undue influence counts of the Smith pleading and granted judgment on the pleadings, without leave to amend, against Hallinan. A judgment dismissing the Hallinan pleading was entered on October 13, 1965, and he filed notice of appeal therefrom.[3]

The sole question before this court is whether the issues sought to be raised by appellant Hallinan's pleading are nonjusticiable because of their religious nature.

It is settled that inquiry into the truth or falsity of religious beliefs is foreclosed by constitutional guarantees of religious freedom and that the courts may ask only whether the proponent of a particular religion holds his beliefs honestly and in good faith. (*United States* v. *Ballard* (1944) 322 U.S. 78 [88 L.Ed. 1148, 64 S.Ct. 882]; *People* v. *Woody* (1964) 61 Cal.2d 716, 726 [40 Cal.Rptr. 69, 394 P.2d 813].)

In the *Ballard* case, wherein respondents were charged with having fraudulently used the mails to promote certain novel and allegedly false religious doctrines, the court stated: "The religious views espoused by respondents might seem incredible, if not preposterous, to most people. But if those doctrines are subject to trial before a jury charged with finding their truth or falsity, then the same can be done with the religious beliefs of any sect. When the triers of fact undertake that task, they enter a forbidden domain. The First Amendment does not select any one group or any one type of religion for preferred treatment. It puts them all in that position." (*United States* v. *Ballard, supra,* at p. 87.)

An examination of appellant's "contest in intervention" reveals that all of the representations allegedly made to the testator were religious in nature and that it is nowhere alleged

---

[3]Although appellant makes some claim to the contrary, Smith is obviously not a party to this appeal. The judgment of October 13, 1965, is against Hallinan only, and an order striking one of several counts in a pleading is interlocutory and nonappealable and must be considered on appeal from the final judgment. (*Hill* v. *Wrather* (1958) 158 Cal.App.2d 818, 821 [323 P.2d 567].) Although the notice of appeal is somewhat ambiguous in that it was filed on behalf of the "contestant" by the attorney who was representing both Smith and Hallinan, Smith obviously would not have appealed from a judgment which did not affect him, hence we assume that the "contestant" referred to is Hallinan.

that respondents did not in fact believe them to be true. Although appellant's pleading does allege that respondents had insufficient information upon which to base their belief, this allegation merely challenges the reasonableness of respondents' beliefs and thus, by implication, the truth or scientific validity of such beliefs. Under the rule of the *Ballard* case, respondents had an absolute right to freely express any religious belief sincerely held and appellant is not entitled to defeat this constitutional right by showing that the particular belief was without demonstrable factual basis or, indeed, was by its very nature one which few persons would be likely to espouse. Since the Hallinan pleading is devoid of any allegation relative to respondents' lack of honesty or good faith, it does not state a cause of action which is susceptible of proof within the limits of the First Amendment.

Appellant makes some attempt to contend, however, that the deficiencies in his pleading were remedied by respondents' answers which denied that certain of the representations allegedly made to the testator were based upon any recognized doctrine or tenet of the Roman Catholic Church and thus, by inference, denied that such representations were believed by respondents. This argument cannot be upheld in the instant case.

Our research discloses only two California cases which have dealt with the question of whether an answer may be used to support a complaint in opposition to a defendant's motion for judgment on the pleadings. In *Way* v. *Shaver* (1906) 2 Cal. App. 650 [84 P. 283], the court held that certain defects in the complaint had been cured by the answer. In the later case of *Hatch* v. *Draper* (1943) 59 Cal.App.2d 411 [138 P.2d 682], the court, without citing *Way* v. *Shaver*, reached a contrary result, but presumably did so because the trial court had dismissed the plaintiff's complaint only after he had been given leave to amend and had declined to do so. In 2 Witkin, California Procedure (1954) Proceedings Without Trial, section 67, pages 1704-1705, the author comments upon the two cases and concludes "that, ordinarily, admissions in the answer ought to be considered, either directly, or indirectly by giving the plaintiff an opportunity to amend the complaint in conformity therewith."

We note that the trial court's memorandum opinion and the judgment itself state that when the motion for judgment on the pleadings was argued, appellant's counsel indicated in open court that he had no desire to make any substan-

tial change in the allegations of his pleading. Under the circumstances, appellant had ample opportunity to amend his pleading in conformity with respondents' answers but he declined to do so, with the result that he may not now contend that the defects in his pleading are cured by matters contained in said answers.

Judgment affirmed.

Agee, J., and Taylor, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied February 15, 1967.